Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, January 11, 2007 4:18:49 PM

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TASHA LYNN KOHLS, | ) | |
| | ) | Case No. 05-2103 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| TASHA LYNN KOHLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 06-86 |
| | ) | |
| BANK OF CHARLES TOWN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Tasha Lynn Kohls (the "Debtor") filed this adversary proceeding against the Bank of Charles Town (the "Bank") to cancel indebtedness and recover damages related to a $34,864 loan that the Bank made to the Debtor on the grounds that the loan was unconscionable at the time it was executed.[1] The case is before the court on the Bank's motion for summary judgment. The Bank argues that the loan it made to the Debtor is not avoidable on grounds of unconscionability and that no damages are appropriate.

The court held a telephonic hearing on the Bank's motion in Wheeling, West Virginia, on

---

[1] The Debtor alleged other State law causes of action; however, the Debtor consented to the entry of summary judgment on all counts except the Debtor's claim that the loan was unconscionable in violation of W. Va. Code § 46A-2-121.

November 9, 2006, at which time the court ordered supplemental briefing and took the matter under advisement. That briefing is now complete, and for the reasons stated herein, the court will grant the Bank's motion and dismiss the Debtor's adversary complaint.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2nd Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

The Debtor is a 37-year old single mother of three children. She lives on her parent's property and pays them about $1,300 per month in rent. The Debtor is employed as a contract analyst for Nextel Communications, Inc., in Reston, Virginia. According to Schedule I, completed in May 2005, the Debtor claims to earn a gross monthly pay of $4,328. The Debtor is also attending school, and she expects to obtain a business degree in December 2006. At that time, she anticipates having over $40,000 in student

loan indebtedness.

On December 1, 2004, the Debtor executed a 90-day loan agreement with the Bank. The principal amount of the loan was $34,864, the interest rate was 8.49%, and it was due in-full on March 1, 2005. The Debtor stated that the purpose of the loan was to help her parents, and her loan application reflects that she earned a $4,600 monthly salary, had about $1,050 in monthly installment debt payments (apart from her $1,300 rent obligation), and that she had about $34,845 in deferred student loans.

According to the Debtor, she had worked out an agreement with her parents whereby she would use the loan proceeds to pay her parent's mortgage arrearage and some of her parent's other debts. In return, her parents were to add her as a co-owner of the real property, and the Debtor's parents planned on refinancing the property to payoff the Debtor's $34,864 loan from the Bank. The only security given for the loan by the Debtor was a second lien position in a 2000 GMC Jimmy. The Bank knew the purpose of the loan, and the anticipated method of repayment.

The Debtor alleges, however, that her parents were not able to obtain the anticipated refinancing because the Debtor's parents had previously received a violation notice from the Jefferson County Department of Planning, Zoning, and Engineering, reflecting that the property was in violation of a Jefferson County Subdivision ordinance. More specifically, the Debtor's parents had converted a barn on the property into a second dwelling unit without obtaining a multi-use variance. Because the anticipated lender refused to refinance property in violation of a zoning ordinance, the Debtor was unable to meet her March 1, 2005 payment deadline with the Bank.

### III. DISCUSSION

The Debtor contends that the Bank's $34,864 loan to her was unconscionable when made pursuant to W. Va. Code § 46A-2-121 and that the court should refuse to enforce the agreement.

The Bank states that, as a matter of law, the uncontroverted facts of this case fail to meet the minimum threshold of unconscionability as required by the statute.

Pursuant to the West Virginia Code, a court may refuse to enforce a consumer loan on the following conditions:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:

–3–

> (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
> (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.
>
> (2) If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination.

W. Va. Code § 46A-2-121.

The term "unconscionable" is not defined by the West Virginia Consumer Protection Act, but the Supreme Court of Appeals for West Virginia has stated that it looks to the definition of "unconscionable" that was furnished by the drafters of the Uniform Consumer Credit Code, which contains identical provisions to § 46A-2-121. *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 860 (W. Va. 1998). Pursuant to the Uniform Consumer Credit Code, "the principle of unconscionability 'is one of the prevention of oppression and unfair surprise and not the disturbance of reasonable allocation of risks or reasonable advantage because of superior bargaining power or position.' " *Id.* (quoting *Uniform Consumer Credit Code*, § 5.108 comment 3, 7A U.L.A. 170 (1974)); *see also Orlando v. Finance One of West Virginia, Inc.*, 369 S.E.2d 882, 885 (W. Va. 1988) (same).

Importantly, " '[a] bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in allocation of risks to the weaker party[, however,] gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful . . . alternative, or did not in fact assent . . . to the unfair terms.' " *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986) (citation omitted). Therefore, in determining whether a contract, or certain a term thereof, is unconscionable, the court's inquiry should focus on "the relative position of the parties, the adequacy of bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *Art's*

*Flower Shop, Inc. v. Chesapeake and Potomac Tel. Co.*, 413 S.E.2d 670, 675 (W. Va. 1991). *See also Mallory v. Mortgage Am. Inc.*, 67 F. Supp. 2d 601, 612 (S.D. W. Va. 1999) ("In determining whether conduct is unconscionable, the court must consider 'whether, in light of the background and setting of the market, the needs of the particular trade or case, and the condition of the particular parties to the conduct or contract, the conduct involved is, or the contract or clauses involved are so one sided as to be unconscionable under the circumstances existing at the time the conduct occurs or is threatened or at the time of the making of the contract.' ") (citation omitted).

In this case, considering the facts in the light most favorable to the Debtor as the non-movant, there is simply insufficient indicia of unconscionablilty to preclude entry of summary judgment in favor of the Bank as a matter of law.

First, the Debtor is a 37-year old female who has nearly completed a degree in business, and who is employed as a contract analyst for Nextel Communications, Inc. She is not uneducated, unsophisticated, illiterate, or infirm. *Cf. Miller v. Equifirst Corp. of WV*, No. 2:00-0335, 2006 U.S. Dist. LEXIS 63816 at *31 (S.D.W. Va. Sept. 5, 2006) (upholding the conscionability of an arbitration agreement, in part, based on the fact that "[n]either plaintiff has alleged that they are illiterate or were unable to read the documents presented to them at closing . . . ."); *with Arnold*, 511 S.E.2d at 861 n.7 (noting that Mr. Arnold, 69 years old, had a fifth grade education and Mrs. Arnold, 63 years old, had an eighth grade education when invalidating an arbitration agreement as unconscionable). No indication exists that the Debtor had grossly inadequate bargaining power when she agreed to execute the loan with the Bank.

Second, the Debtor did not need to borrow money from the Bank. The purpose of the loan was not for her economic needs, but was to help her parents pay their bills. *See, e.g.*, *Hager v. American Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 787 (S.D.W. Va. 1999) (denying a defendant's motion for summary judgment based, in part, on the fact that the plaintiffs lost their possessions in a house fire and were in immediate need of financial assistance). No allegation exists that the Bank was the only lending institution in a position to make a loan to the Debtor, or that the loan was a financial necessity. The facts simply do not support a finding of compulsion or oppression by the Bank.

Third, according to the Debtor, all parties contemplated that the Debtor's parents would be refinancing their real property to repay the entire amount of the loan on its 90-day due date. The date of

the execution of the loan agreement is controlling in determining whether its terms are unconscionable. *Troy Mining Corp.*, 346 S.E.2d at 754. No allegation exists that either the Debtor or the Bank knew at the time of the execution of the loan that the anticipated refinancing would not be possible based on a zoning violation on the Debtor's parent's property. Indeed, between the two parties, the Debtor was the one who was more likely aware of the zoning violation, considering that she lives on the property, and that her parents had requested a multi-use variance for their property in June 2003 that had been denied. In short, the loan is not unconscionable on the basis that it is a 90-day note with one lump sum payment because the Bank anticipated that the Debtor's parents would be able to obtain the contemplated refinancing to repay the loan on its due date.[2]

Fourth, the Bank's loan to the Debtor is undersecured, it bears an interest rate of 8.49%, and it has no terms that could be characterized as unconscionable on its face, considering that the purpose of the loan was to help the Debtor's parents clean-up their credit so that they could obtain the desired refinancing of their real property to payoff the Bank's loan to the Debtor. *See, e.g.*, *Herrod v. First Republic Mortg. Corp.*, 625 S.E.2d 373, 380 (W. Va. 2005) (finding evidence of unconscionable loan terms when the loan fees amounted to more than 10.5% of the loan amount, Fannie Mae determined that the loan was in violation of its corporate policy, and when the loan was made shortly before the passage of the West Virginia Predatory Lending Law, which suggested the existence of opportunistic fee charging). The Debtor has not argued that the Bank deceived her concerning the loan terms, or that she suffered an unfair surprise regarding unfair loan terms.

In sum, based on the uncontroverted facts of the case, insufficient indicia of unconscionability exists to preclude entry of summary judgment in favor of the Bank. As stated by the Supreme Court of Appeal

---

[2] The Debtor argues that she only earns income of about $4,600 per month, she has impending student loan obligations, $1,050 in installment debts, and a $1,300 monthly rental obligation. Being a single mother of three children, the Debtor asserts that the Bank knew that her income, when compared to her expenses, was insufficient to repay the $34,864 loan obligation. However, neither the Bank nor the Debtor anticipated the Debtor repaying the loan out of her future income stream. Both parties gambled that the Debtor and her parents would be able to obtain the anticipated refinancing to repay the loan. No suggestion in the record exists that – but for the zoning violation – the refinancing would not be successful or that it the proceeds from that refinancing would be insufficient to repay the Bank.

for West Virginia, "A litigant who complains that he was forced to enter a fair agreement will find no relief on grounds of unconscionability." *Troy Mining Corp.*, 346 S.E.2d at 753.

## IV. CONCLUSION

The court will grant the Bank's motion for summary judgment and will dismiss the Debtor's complaint.[3]  A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

[3] Given the court's ruling, it is not necessary to address the Bank's contention that the Debtor's cause of action is barred by the statute of limitations.